# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

HANS SCHINK,

        Plaintiff,

v.                             Case No: 2:16-cv-610-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Hans Schink seeks judicial review of the denial of his claim for disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## I.    Issues on Appeal[1]

Plaintiff raises four issues on appeal: (a) whether the Administrative Law Judge ("ALJ") properly accorded minimal weight to the opinions of Plaintiff's treating physicians; (b) whether the ALJ properly found that Plaintiff's mental impairment was not severe; (c) whether substantial evidence supports the ALJ's finding that Plaintiff could perform his past relevant work; and (d) whether the ALJ had a bias

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

that affected his decision.

## II.    Procedural History and Summary of the ALJ Decision

On February 8, 2010, Plaintiff filed applications for SSI and a period of DIB alleging that he became disabled and unable to work on October 1, 2004. Tr. 105, 172-84. Plaintiff alleged disability due to bipolar disorder, type II diabetes and right rotator cuff problems. Tr. 106, 226. Plaintiff's applications were denied initially and upon reconsideration. Tr. 133-36, 138-40. Plaintiff requested a hearing before an ALJ and initially received a hearing before ALJ Larry J. Butler on October 20, 2011. Tr. 81-104, 141-42. Plaintiff, who was represented by counsel during the hearing, appeared and testified at the hearing. Tr. 83. On December 30, 2011, the ALJ issued a decision finding Plaintiff not disabled from October 1, 2004 through September 30, 2011, the date last insured. Tr. 112-20. Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was granted on June 18, 2013. Tr. 126-29. The Appeals Council remanded the case to the ALJ for further proceedings. *Id.* Plaintiff received a second hearing before the ALJ on January 28, 2014, during which he again was represented by an attorney. Tr. 46-74. Plaintiff appeared and testified at the hearing. *Id.*

On March 16, 2015, the ALJ issued a second decision finding Plaintiff not disabled from October 1, 2004 through September 30, 2011, the date last insured. Tr. 19-37. At step one, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2011, and had not engaged in substantial gainful activity from August 19, 2004 through September 30, 2011.

Tr. 22-23.    At step two, the ALJ determined that through the date last insured, Plaintiff had the following severe impairments: right shoulder and low back pain syndrome, history of hypertension, diabetes mellitus, hypothyroidism and obesity. Tr. 23.    At step three, the ALJ concluded that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."    Tr. 30.

The ALJ then determined that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work[2] limited to "lifting/carrying up to 20 pounds occasionally and up to 10 pounds frequently. [Plaintiff] can sit, stand and/or walk for a total of six hours during an eight-hour workday.    [Plaintiff] can occasionally stoop or crouch.    [Plaintiff] can frequently reach in all directions, including overhead."    *Id.*    Next, the ALJ found that through the date last insured, Plaintiff was capable of performing his past relevant work as a car salesman.    Tr. 36.    Thus, the ALJ concluded that Plaintiff was not disabled from

---

[2] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

October 1, 2004 through the date last insured, September 30, 2011.  Tr. 37.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on June 7, 2016.  Tr. 1.  Accordingly, the March 16, 2015 decision is the final decision of the Commissioner.  Plaintiff filed an appeal in this Court on August 4, 2016.  Doc. 1.  Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.  Docs. 12, 13.

## III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[3]  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

---

[3] The Court notes that after Plaintiff filed his applications and the ALJ issued his decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions.  *See e.g.*, 20 C.F.R. §§ 404.1527, 404.1520c (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016).  The Court will apply rules and regulations of the time period relevant to this case.

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV. **Discussion**

    a. *Whether the ALJ properly accorded minimal weight to the opinions of Plaintiff's treating physicians*

At step two, the ALJ found that through the date last insured, although Plaintiff had various severe impairments, his bipolar disorder was not a severe impairment. Tr. 23-31. The ALJ discussed in detail the treatment notes concerning Plaintiff's bipolar disorder. Tr. 24-31. Relevant here are the treatment notes and opinions of Plaintiff's two treating psychiatrists, Nelson A. Hernandez, M.D., P.A., and Charles Assad, Ph.D. Tr. 24-29, 31.[4]

---

[4] Page twelve (12) of the ALJ's opinion is page thirty-one (31) of the transcript, and

On April 26, 2011, Plaintiff saw Dr. Hernandez for his bipolar disorder. Tr. 646. Dr. Hernandez noted that Plaintiff was diagnosed with bipolar disorder in 2004. *Id.* During this visit, Plaintiff reported, among other things, that he had mood swings, racing thoughts and had been sad and depressed lately. *Id.* He also noted that he experienced increased anxiety and had not been sleeping well lately. *Id.* Nonetheless, Plaintiff did not have any panic attacks or auditory, visual or tactile hallucinations and had a good appetite. *Id.* Plaintiff further denied any delusions and was oriented to time, place and person. *Id.*

Dr. Hernandez opined that Plaintiff's motor behavior was retarded, and his mood was dysthymic and depressed. Tr. 649. His affect was frequently changing, and his recent memory was impaired. *Id.* Plaintiff had moderate anxiety and depression with the inability to experience pleasure. *Id.* In contrast, Dr. Hernandez indicated that Plaintiff was clean and cooperative, although he was tearful. *Id.* Dr. Hernandez further noted that Plaintiff's speech was normal, and his thought process was organized and circumstantial. *Id.* Plaintiff had relevant content of thought, intact cognition and fair insight and judgment. *Id.* He was oriented to person, place and time and denied any suicidal or homicidal ideations, and Plaintiff's perception was normal without any delusions. *Id.* Plaintiff also did not exhibit any dominant character structure. *Id.*

---

page thirteen (13) of the decision is page thirty (30) of the Transcript. Tr. 30-31.

Dr. Hernandez diagnosed Plaintiff with bipolar disorder and anxiety disorder. Tr. 650. Plaintiff's Global Assessment of Functioning ("GAF")[5] score was 60.[6] *Id.* Along with other plans for Plaintiff, Dr. Hernandez referred him to Dr. Assad and asked him to return in two weeks. *Id.* The ALJ discussed this evaluation in his decision. Tr. 24.

On September 1, 2011, Plaintiff returned to Dr. Hernandez. Tr. 677. Plaintiff reported that he had a "fair" energy level, fewer mood swings and racing thoughts and was "less" depressed. *Id.* Plaintiff's sleep was "fair." *Id.* His appetite was good; and he did not have any auditory, visual or tactile hallucinations. *Id.* Plaintiff was oriented to person, place and time, and his memory was intact, although his recent memory was impaired. *Id.* Dr. Hernandez opined that Plaintiff's psychomotor was less retarded than it was during the prior visit, even though his affect was frequently changing. *Id.* Plaintiff's mood was less depressed than it was during the prior visit, and Plaintiff had mild anxiety. *Id.* His thought content and process were intact, and he denied any suicidal or homicidal ideas or plans. *Id.* Plaintiff had fair insight and judgment. *Id.* Dr. Hernandez, among other things, prescribed medications and asked Plaintiff to follow up with Dr. Assad and return in two weeks. *Id.*

---

[5] GAF is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) ("DSM IV").

[6] A GAF score of 51 to 60 indicates moderate symptoms or moderate impairment in social, occupational, or school functioning. *See* DSM IV.

Plaintiff again saw Dr. Hernandez on September 15, 2011. Tr. 676. Plaintiff indicated he felt better during this visit. *Id.* He continued to show improvements, as he had less mood swings and racing thoughts and was less agitated. *Id.* Plaintiff reported that he slept better and his appetite was good. *Id.* During this visit, Plaintiff's psychiatric examination was unremarkable and showed improvements; Plaintiff's recent memory was better, and his psychomotor was less retarded. *Id.* Plaintiff's mood was less depressed, and his thought process was intact and circumstantial. *Id.* His affect was appropriate, and Plaintiff had good insight and judgment. *Id.* As a result, Dr. Hernandez, among other plans, asked Plaintiff to follow up with Dr. Assad and return in four weeks. *Id.*

On September 21, 2011, Dr. Hernandez completed a Questionnaire as to Mental RFC based on his examination of Plaintiff. Tr. 666. Regarding Plaintiff's social interaction, Dr. Hernandez opined that Plaintiff has a moderate[7] impairment of the ability to accept instructions from or respond appropriately to criticism from supervisors or superiors. *Id.* Dr. Hernandez also indicated that Plaintiff has a moderate impairment of the ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes. *Id.* He further noted that Plaintiff has moderate impairments of the ability to maintain attention and concentration for more than brief periods of time and the ability to perform at production levels expected by most employers. Tr. 667.

---

[7] "Moderate" is defined as "[u]nable to function in this area from 11% to 25% of the work day or week." Tr. 666.

With respect to adaptive skills, Dr. Hernandez opined that Plaintiff has moderate impairments to respond appropriately to changes in a work setting. *Id.* The doctor also noted that Plaintiff has moderately impaired abilities to remember locations and workday procedures and instructions, to be aware of normal hazards and take necessary precautions and to maintain personal appearance and hygiene. *Id.* Furthermore, Dr. Hernandez noted that Plaintiff has markedly[8] impaired abilities to behave predictably, reliably and in an emotionally stable manner and to tolerate customary work pressure. *Id.* In addition, Dr. Hernandez noted that Plaintiff's condition is likely to deteriorate if he is placed under stress, particularly that of a job, because Plaintiff's condition "showed multiple flare-ups." Tr. 668. He concluded that although Plaintiff is capable of managing his own funds, his impairment has lasted or is expected to last twelve months or more. *Id.*

The ALJ fully discussed this opinion in his decision. Tr. 25. He accorded minimal weight to the opinion for reasons that are explained below. Tr. 28-29. Dr. Hernandez treated Plaintiff twice after he completed the evaluation, on October 11, 2011 and December 25, 2011. Tr. 675, 681. Although these visits are subsequent to Plaintiff's date last insured, Dr. Hernandez's findings from these visits were substantially similar to ones from the prior visits.[9] Tr. 675, 81. Thus, the findings

---

[8] "Marked" is defined as "[u]able to function in this area from 26% to 50% of the work day or work week." *Id.*

[9] On October 11, 2011, Dr. Hernandez opined that Plaintiff was oriented to person, place and time, and his memory was intact. Tr. 675. Plaintiff's thought content and organization were intact, and Plaintiff did not have any suicidal or homicidal ideation. *Id.* Plaintiff had good insight and judgment. *Id.* Similar to the prior visits, Plaintiff's psychomotor was still retarded, and Plaintiff had depressed and anxious moods and moderate anxiety. *Id.* On December 25, 2011, Dr. Hernandez noted improvements, as Plaintiff's

from these two visits also support the ALJ's finding that Plaintiff's bipolar disorder was not a severe impairment from October 1, 2004 to September 30, 2011. Tr. 23, 31, 675, 681.

Dr. Assad had frequent counseling sessions with Plaintiff in 2011. Tr. 579-81, 744. On June 6, 2011, Plaintiff first saw Dr. Assad for his anxiety, depression and history of bipolar II disorder. Tr. 580. During this visit, however, as the ALJ correctly noted, Plaintiff "discussed his marital problems." Tr. 24, 580. Dr. Assad found that Plaintiff appeared neat and properly groomed and had good insight. Tr. 580. He also noted that Plaintiff's attitude was cooperative, and his recent and remote memories were "ok." *Id.* Plaintiff did not have any delusions and denied any homicidal ideation. Tr. 581. Plaintiff's thought organization was "engaged at times." *Id.* Dr. Assad opined that Plaintiff's cognition was clinically at least average, and his perception was accurate and clear. *Id.* Plaintiff was oriented to time, place and person. *Id.*

In contrast, Dr. Assad found that Plaintiff's mood was elevated, elated, expansive and anxious. Tr. 580. Plaintiff's affect exhibited some hyperactivity and some hypomania. *Id.* Dr. Assad further noted that Plaintiff had increased anxiety and depression, and his judgment was impaired especially during hypomanic episodes. *Id.* Plaintiff's speech was rapid and pressured at times, and Plaintiff admitted to having passive suicidal ideation at times. Tr. 581. Dr. Assad indicated "depressed" as Plaintiff's character structure. *Id.* Dr. Assad diagnosed Plaintiff

psychomotor was normal, and Plaintiff's anxiety was mild. Tr. 681.

with bipolar II disorder and gave a deferred diagnosis on Plaintiff's personality disorders. *Id.* Dr. Assad indicated that Plaintiff's GAF score from the prior year was 50,[10] and his current score was 55. *Id.* Dr. Assad, among other things, ordered short-term therapy for Plaintiff and requested coordinated services with Dr. Hernandez. *Id.*

The ALJ correctly noted that Plaintiff's subsequent counselling "revolved around [Plaintiff's] relationship with his wife." Tr. 25, 579, 744. Apart from Plaintiff's marital issues, Dr. Assad found on June 20, 2011 that although Plaintiff continued to have pressured speech and disjointed thought process, Plaintiff was able to be redirected and to remain on topic. Tr. 579. On July 6, 2011, Dr. Assad opined that compared to the prior visit, Plaintiff's thought process was clearer and more logical, and his speech was less pressured. *Id.* Nonetheless, the doctor noted that Plaintiff still had bipolar, rapid changes in his mood. *Id.* On July 20, 2011, Dr. Assad noted that Plaintiff had rapid speech and "somewhat" tangential thought process. *Id.* The ALJ discussed Dr. Assad's treatment notes in his decision. Tr. 24-25.

On August 29, 2011, Dr. Assad indicated that Plaintiff had depressed mood and affect, which was tied to Plaintiff's relationship issue. Tr. 744. Similarly, on September 19, 2011, Dr. Assad noted Plaintiff's disappointment and anger associated with his roommate. *Id.* Dr. Assad opined that Plaintiff tended to respond to his

---

[10] A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. DSM IV.

disappointment and anger with either intense anger or passive-aggressive behavior. *Id.* Although Plaintiff continued to see Dr. Assad, the treatment notes from Plaintiff's subsequent visits are beyond the relevant time period of October 1, 2004 to September 30, 2011. Tr. 733-44, 868.

On October 11, 2011, Dr. Assad complete a Questionnaire as to Mental RFC based on his treatment of Plaintiff. Tr. 670-73. With respect to Plaintiff's social interaction, Dr. Assad opined that Plaintiff has a marked impairment of the ability to accept instructions from or respond appropriately to criticism from supervisors or superiors. Tr. 670. Dr. Hernandez also indicated that Plaintiff has a marked impairment of the ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes. *Id.* He further noted that Plaintiff has markedly impaired abilities to respond appropriately to co-workers or peers and to relate to the general public and maintain socially appropriate behavior. Tr. 671. Dr. Assad indicated that his responses would not change even if only minimal contact or interaction with others is required. *Id.*

In the area of sustained concentration and persistence, Dr. Assad opined that Plaintiff has moderately impaired abilities to perform and complete work tasks in a normal work day or week at a consistent pace, to work in cooperation with or in proximity to others without being distracted by them, and to carry through instructions and complete tasks independently. *Id.* He further noted that Plaintiff has a mildly[11] impaired ability to process subjective information accurately and to

---

[11] "Mild" is defined as "[u]nable to function in this area less than 10% of the work day

use appropriate judgment. *Id.* Dr. Assad also indicated that Plaintiff has markedly impaired abilities to maintain attention and concentration for more than brief periods of time and to perform at production levels expected by most employers. Tr. 672.

With regard to Plaintiff's adaptive skills, Dr. Assad opined that Plaintiff has marked impairments of the abilities to respond appropriately to changes in a work setting, to maintain personal appearance and hygiene, and to tolerate customary work pressures. *Id.* Furthermore, he noted that Plaintiff has a moderately impaired ability to remember locations and workday procedures and instructions. *Id.* He also indicated that Plaintiff has a mildly impaired ability to be aware of normal hazards and take necessary precautions. *Id.* Lastly, Dr. Assad opined that Plaintiff has an extreme[12] impairment of the ability to behave predictably, reliably and in an emotionally stable manner. *Id.*

In addition, Dr. Assad noted that Plaintiff's condition is not likely to deteriorate if he is placed under stress, particularly that of a job. Tr. 673. He concluded that although Plaintiff is capable of managing his own funds, his impairment has lasted or is to be expected to last twelve months or more. *Id.* The ALJ discussed this opinion in assessing the severity of Plaintiff's bipolar disorder. Tr. 25.

---

[or] work week." Tr. 670.

[12] "Extreme" is defined as "[u]nable to function in this area over 50% of the work day or work week." *Id.*

The ALJ accorded minimal weight to the questionnaires completed by Drs. Assad and Hernandez for several reasons. Tr. 28-29, 31. The ALJ first discussed that:

- The Questionnaire[s] use[] the terms "mild" and "extreme" which are not descriptive terms (with an established meaning) used in the "Mental [RFC] Assessment," Form SSA-4734-F4-SUP11, the Questionnaire[s] do[] not define the phrase "unable to function," and the Questionnaire[s] do[] not indicate the source or how the percentages of a workday or workweek [from less than 10% to over 50%] were derived that define the gradations from "mild" to "extreme."

- The Questionnaire[s] do[] not address the category of "Understanding and Memory" at all,

- The Questionnaire[s] request[] estimates of impairment in the categories of "Social Interaction,["] "Sustained Concentration and Persistence" and "Adaptation" that are not consistent with the standard requests used in Form SSA-4734-F4-SUP. Several questions in the Questionnaire[s] appear to be modified versions of questions appearing in Form SSA-4734-F4-SUP. However, the modifications introduce ambiguity and uncertainty with respect to both the questions asked and the provider's responses. Several of the questions in the Questionnaire[s] appear to be *sui generis* and use undefined terms. For instance, the "Adaptation" category of the Questionnaire[s] requests:

  - "Estimated impairment of ability to behave predictably, reliably and in an emotionally stable manner,"
  - "Estimated impairment of ability to tolerate customary work pressures," and
  - "Is the claimant's condition likely to deteriorate if he/she is placed under stress, particularly that of a job?["]

Tr. 28-29.

The ALJ further explained that the opinions of Drs. Assad and Hernandez are not well supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with substantial evidence of record. Tr. 29. In

addition, the ALJ noted that Drs. Assad and Hernandez treated Plaintiff only "sporadically," and their treatment notes indicate "only mild limitations in reported mental status examinations, at best." *Id.* The ALJ also found that Plaintiff was able to participate in normal activities of daily life, showing Plaintiff had much better functioning than what Drs. Assad and Hernandez opined. Tr. 29, 31.

Plaintiff argues that the ALJ erred in discrediting the questionnaire forms completed by Drs. Assad and Hernandez. Doc. 15 at 9-11. He also asserts that in his decision, the ALJ cited to the wrong Social Security Ruling ("SSR"), SSR 96-5p, instead of SSR 96-2p, the latter of which addresses the issue of giving controlling weight to treating source medical opinions. *Id.* at 11. *See* Tr. 29; SSR 96-2p, 1996 WL 374188 (July 2, 1996). Furthermore, Plaintiff presents evidence contradicting the ALJ's findings. Doc. 15 at 11-13. The Commissioner responds that substantial evidence supports the ALJ's reasons for discrediting the opinions of Drs. Assad and Hernandez. Doc. 16 at 5-11.

First, the Court finds that the ALJ properly analyzed the questionnaire forms completed by Drs. Assad and Hernandez. Tr. 28-29. Form questionnaires or so-called "checklist" opinions, such as those completed by Drs. Assad and Hernandez, generally are disfavored. *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by

the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

Furthermore, the questionnaire forms asked Drs. Assad and Hernandez to assess Plaintiff's mental RFC, which is an issue reserved for the Commissioner. Tr. 666-68, 670-73. RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *see Calvo v. Colvin*, No. 8:12-CV-1485-T-TGW, 2013 WL 3941027, at *5 (M.D. Fla. July 30, 2013) ("[T]he determination of the plaintiff's functional limitations in assessing the plaintiff's [RFC] is an issue assigned to, and reserved to, the Commissioner."). The regulations provide that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." 20 C.F.R. § 404.1527(d)(2). As a result, the Court finds that the ALJ did not err in analyzing the questionnaire forms completed by Drs. Hernandez and Assad. Tr. 28-29, 666-68, 670-73.

Next, the Court upholds the ALJ's finding that substantial evidence and the treatment notes of Drs. Assad and Hernandez do not support the opinions of Drs. Assad and Hernandez. Tr. 29, 31. Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be

discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Here, the Court finds that substantial evidence supports the ALJ's reasons for according minimal weight to the opinions of Drs. Assad and Hernandez. Tr. 28-29, 31. The ALJ correctly explained that Drs. Assad and Hernandez only sporadically treated Plaintiff before completing the questionnaire forms. Tr. 29. Prior to completing the questionnaire form on September 21, 2011, Dr. Hernandez had treated Plaintiff only three times: April 26, 2011, September 1, 2011 and September 15, 2011. Tr. 646-50, 666-68, 676-77. Similarly, Dr. Assad began having counseling sessions with Plaintiff on June 6, 2011, only four months prior to completing the questionnaire form on October 11, 2011. Tr. 580-81, 670-73. Furthermore, the ALJ accurately noted that "[t]he majority of [Dr. Assad's]

counselling, according to treatment notes, revolved around [Plaintiff's] relationship with his wife." Tr. 25.

The ALJ also accurately found that the treatment notes of Drs. Assad and Hernandez revealed Plaintiff's mild mental limitations. Tr. 29. Dr. Hernandez consistently opined that Plaintiff's speech was normal, and his thought organization and content of thought were relevant. Tr. 649, 676-77. Throughout his visits to Dr. Hernandez, Plaintiff was oriented to person, place and time, had fair or good insight and judgment and denied any delusions. *Id.* Plaintiff's memory was intact, although his recent memory was impaired. *Id.* Furthermore, Plaintiff showed improvements, as Dr. Hernandez noted that his psychomotor was less retarded, and he was less depressed compared to the prior visits. Tr. 676-77. On September 15, 2011, Dr. Hernandez also opined that Plaintiff's recent memory was better, and his anxiety was only mild. Tr. 676. Furthermore, Dr. Assad's treatment notes contain only a few psychiatric findings related to Plaintiff's bipolar disorder because as the ALJ noted, Dr. Assad's counseling sessions were focused on Plaintiff's marital problems. Tr. 25, 579-81, 744. Accordingly, the Court finds that the ALJ here demonstrated good cause to accord minimal weight to the opinions of Drs. Assad and Hernandez. Tr. 29, 666-68, 670-73; *see Winschel,* 631 F.3d at 1179.

Plaintiff presents evidence that contradicts the ALJ's finding, such as the psychological evaluation J.L. Bernard, J.D., Ph.D., performed on June 30, 2010 at the referral of the Office of Disability Determination. Doc. 15 at 12; Tr. 486. On June 30, 2010, Plaintiff complained of feeling agitated and depressed and having memory

and social problems and passive suicidal thoughts. Tr. 487. Dr. Bernard noted that Plaintiff was talkative and responsive, although he engaged in circumstantial expression and occasionally could not offer details regarding certain portions of his life. *Id.*

Dr. Bernard noted that Plaintiff was diagnosed with bipolar disorder in 2003 and saw two doctors for his bipolar disorder. *Id.* Plaintiff reported his history of substance and alcohol abuse as well as his marital and financial problems. Tr. 488. According to Plaintiff, he spent most of his days watching television, walking the dog and doing very little housework. *Id.* Plaintiff further noted that he cooked minimally, read once in a while, and spent most of his days napping, using the computer and going for drives. *Id.* Dr. Bernard indicated that Plaintiff drove himself to the interview and was well groomed, although his attitude was brusque, arrogant, flippant and abrasive. *Id.* During this visit, Dr. Bernard opined that Plaintiff tended to engage in circumlocution, and his accounts were circumstantial. Tr. 488. Plaintiff exhibited decreased memory skills, pressured and agitated speech, and passive suicidal ideation. *Id.* He further had a harsh and domineering aspect to his personality and expressed a desire to commit homicide. *Id.*

In contrast, Dr. Bernard's evaluation of Plaintiff was unremarkable. Tr. 488-89. Dr. Bernard found that Plaintiff was awake, alert and responsive to stimuli, and his orientation was good. *Id.* Plaintiff had intact memory registry and brief recall skills, and his attention to brief tasks was more than adequate. *Id.* Plaintiff produced his results very quickly and without any error, and his language skills were

intact. *Id.* Plaintiff was able to name objects in the evaluation room and repeat phrases. *Id.* Plaintiff also had no problems with retaining and executing a multilayered task and was able to read and make brief sentences. Tr. 489. Dr. Bernard also found that Plaintiff's visuospatial reproductive skills and gross and fine motor skills were unimpaired. *Id.* Plaintiff possessed average intellect and level of responses, and his sensation and perception modalities were intact. *Id.* Plaintiff's activity levels were agitated, but contained. *Id.* Plaintiff's mood was stable, although his affect was irritable. *Id.* Dr. Bernard did not find any indication of psychosis or perceptual anomalies. *Id.*

After examining Plaintiff, Dr. Bernard diagnosed Plaintiff with mood disorder secondary to insulin-dependent diabetes type 2, alcohol-induced mood disorder with unknown onset, alcohol abuse in sustained remission, and personality disorder not otherwise specified with cluster B features. *Id.* Dr. Bernard further indicated that Plaintiff's current GAF score was 59, and his highest score from the prior year was 64.[13] *Id.* Dr. Bernard also opined that Plaintiff had "a profile similar to an abstaining alcohol abuser . . . as opposed to that of [an individual with bipolar disorder.]" *Id.* Dr. Bernard noted that Plaintiff's prognosis was chronic, although Plaintiff could handle money. *Id.* The ALJ discussed Dr. Bernard's evaluation in assessing Plaintiff's bipolar disorder. Tr. 24.

---

[13] A GAF score of 61 to 70 indicates mild symptoms or mild impairment in social, occupational, or school functioning. *See* DSM IV.

Plaintiff also refers to the treatment notes of Nicholas Anthony, Ph.D., who treated Plaintiff from April 2009 to August 2009 and from June 2010 to November 2010. Doc. 15 at 12; Tr. 356-64, 532-42. Plaintiff argues that Dr. Anthony's treatment notes contain findings showing his abnormal mental status, such as his anger, agitated mood and pressured mood. Doc. 15 at 12-14.

The ALJ here fully considered Dr. Anthony's treatment notes, evidenced by his discussion of them in his decision. Tr. 24. The ALJ noted that Dr. Anthony diagnosed Plaintiff with bipolar disorder on April 27, 2009, and Plaintiff received treatment from Dr. Anthony between April and August 2009. Tr. 24, 356-64. The ALJ also noted that Plaintiff returned to Dr. Anthony for his anger and aggressive behavior on June 15, 2010 and had a few sessions with Dr. Anthony, reporting his marital and employment issues. Tr. 24, 532-42. Nonetheless, as the ALJ accurately discussed, Dr. Anthony opined on August 4, 2009 that Plaintiff's condition improved, and Plaintiff's outlook became "more positive." Tr. 24, 360.

Contrary to Plaintiff's argument, the ALJ clearly reviewed and discussed Plaintiff's relevant medical evidence, including Dr. Bernard's evaluation and Dr. Anthony's treatment notes, assessed their conflicting findings, and concluded that the opinions of Drs. Assad and Hernandez are inconsistent with substantial evidence of record. Tr. 24-31. Assessing conflicting evidence was within the ALJ's discretion because "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151,

1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409). Thus, the Court will not overturn the ALJ's decision simply because, as Plaintiff argues, conflicting medical evidence exists, and the ALJ resolved the conflicts in the evidence of record. Doc. 15 at 12. *See Powers, 738 F.2d at 1152; Lacina*, 606 F. App'x at 525 (citing *Grant*, 445 F.2d at 656) ("It is 'solely the province of the Commissioner' to resolve conflicts in the evidence and assess the credibility of witnesses.").

To the extent that the ALJ cited to a different SSR from one that was applicable, the Court finds that it was a harmless error because it did not affect the ALJ's findings regarding the opinions of Drs. Assad and Hernandez. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Based on the findings above, the Court finds that the ALJ applied the proper legal standards and properly accorded minimal weight to the opinions of Drs. Hernandez and Assad. Tr. 28-29, 31.

### b. Whether the ALJ properly found that Plaintiff's mental impairment was not severe

At step two, the ALJ considered Plaintiff's bipolar disorder and determined that it was not severe. Tr. 24-31. In support, the ALJ discussed the degree of limitations imposed by Plaintiff's mental impairment in four functional areas. Tr. 30-31. The ALJ found that Plaintiff has mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. Tr. 31. The ALJ also noted that Plaintiff has experienced no episodes of decompensation of extended duration. *Id.* Because Plaintiff's bipolar disorder caused no more than mild limitations in the three functional areas and Plaintiff experienced no episodes of

decompensation of extended duration, the ALJ found that Plaintiff's bipolar disorder was a non-severe impairment. *Id.*

Plaintiff argues that substantial evidence does not support the ALJ's finding that his bipolar disorder was a non-severe impairment. Doc. 15 at 13-15. Plaintiff refers to his history of treatment and GAF scores. *Id.* at 13-14. Plaintiff also asserts that the ALJ did not consider his mental impairment in assessing his RFC. *Id.* at 13. The Commissioner responds that substantial evidence supports the ALJ's finding. Doc. 16 at 11-14. The Commissioner further argues that Plaintiff's GAF scores are not entitled any weight. *Id.* at 13.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three. *See* 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of establishing that his impairments are severe and prevent the performance of his past relevant work. *Bowen*, 482 U.S. 146 at 146 n.5 (1987). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id.*; *see* 20 C.F.R. § 404.1520.

Here, at step two, the ALJ determined that Plaintiff's bipolar disorder was a non-severe impairment after considering the four broad functional areas (the "paragraph B criteria") set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). Tr. 30-31. The first functional area is activities of daily living. Tr. 31. The ALJ accurately discussed that Plaintiff could perform daily activities, such as cleaning, shopping, cooking, paying billing, preparing simple meals, caring for two parrots and caring appropriately for grooming and hygiene. Tr. 31, 247-52, 488.

In the next functional area, the ALJ found that Plaintiff had mild limitation in social functioning because he could "interact independently, appropriately, effectively and on a sustained basis with other individuals." Tr. 31, 251-52. As the ALJ

correctly documented, Plaintiff reported that he watches television with other people every day and sometimes attends church.    Tr. 31, 251.    He noted that to go to places, he does not need any reminder from others or someone to accompany him.    Tr. 251. Although Plaintiff reported that he has problems getting along with his family, friends and neighbors, he married twice, and his two marriages lasted for a substantial period of time.    Tr. 252, 488.

The ALJ further found that Plaintiff had mild limitation in concentration, persistence or pace.    Tr. 31.    The ALJ determined that Plaintiff had "the ability to sustain focused attention and concentration long enough to permit timely and appropriate completion of tasks commonly found in work settings."    Tr. 31.    In support, the ALJ accurately documented Dr. Bernard's findings that Plaintiff's memory registry and brief recall were intact and that Plaintiff's attention to brief tasks was more than adequate.    Tr. 31, 488.    In addition, the ALJ discussed Plaintiff's reports that he does not need any reminders to take care of personal needs and grooming and writes notes for himself as reminders for taking medications.    Tr. 31, 249.    The ALJ also accurately noted Plaintiff's reports that he is able to pay bills, handle a savings account, count change and use a checkbook or money orders.    Tr. 31, 250.    Lastly, the ALJ found that Plaintiff has experienced no episodes of decompensation.    Tr. 31.

Plaintiff attempts to rebut the ALJ's findings by presenting evidence that he argues contradicts the ALJ's findings.    Doc. 15 at 13-14.    Plaintiff refers to Dr. Bernard's evaluation, the treatment notes of Drs. Anthony, Assad and Hernandez

and the findings of Raymond Johnson, M.D. Doc. 15 at 14. As noted, the ALJ fully discussed Dr. Bernard's evaluation and the treatment notes of Drs. Anthony, Assad and Hernandez, and it is up to the ALJ to resolve conflicts in the evidence. Tr. 24-26; *Grant*, 445 F.2d at 656.

Regarding Dr. Johnson's treatment notes, the Court finds that they support the ALJ's finding that Plaintiff's bipolar disorder was a non-severe impairment. Tr. 31. On June 24, 2010, Plaintiff saw Dr. Johnson for mood swings, depression and anger. Tr. 492. Dr. Johnson found that Plaintiff was extremely hyper verbal and angry during the visit and presented issues including chronic anxiety, chronic depression and chronic irritable mood. *Id.* Dr. Johnson noted that Plaintiff was experiencing brooding over the past, intermixed manic and depressive episodes, racing thoughts, and rapid cycling manic and depressive episodes. Tr. 493. He diagnosed Plaintiff with bipolar I disorder, most recent episode mixed, moderate, chronic (principal) and noted that Plaintiff's GAF score was 55. Tr. 492.

In contrast, Plaintiff's psychological examination during this visit was unremarkable and normal. Tr. 493. Dr. Johnson opined that Plaintiff appeared his stated age and was oriented in all spheres. *Id.* Plaintiff was alert, and his affect was appropriate. *Id.* Plaintiff's mood was normal, and he was neatly dressed and well groomed. *Id.* Plaintiff made good eye contact, and his speech was logical, coherent and goal-directed. *Id.* His recent and remote memory was not impaired, and his psychomotor activity was normal. *Id.* Dr. Johnson noticed a "negligible degree of conceptual disorganization." *Id.* Plaintiff's thought content had "no

significant preoccupations," and he denied any hallucinations.  *Id.*  Plaintiff's attitude was cooperative and interested, and he was able to verbalize his awareness of problems and understood consequences.  *Id.*  Plaintiff's judgment was good, and he was able to attend and maintain focus.  *Id.*  He also was reflective and was able to resist urges.  *Id.*

The result of the examination was the same during Plaintiff's second visit to Dr. Johnson on July 1, 2010.  Tr. 490.  Although the ALJ did not explicitly discuss Dr. Johnson's treatment notes, Dr. Johnson's unremarkable findings support the ALJ's finding of Plaintiff's bipolar disorder as a non-severe impairment.  Tr. 24-31, 490-94.  Accordingly, contrary to Plaintiff's argument, the Court finds that substantial evidence supports the ALJ's findings.  Tr. 23-31.

In addition, although the ALJ found that Plaintiff's mental impairment was not severe, the ALJ determined that through the date last insured, Plaintiff suffered from severe impairments and continued through the sequential evaluation to step four.  Tr. 23-37.  The Eleventh Circuit has noted that the finding of *any* severe impairment is enough to satisfy step two, "because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe."  *Burgin v. Comm'r of Soc. Sec.,* 420 F. App'x 901, 902 (11th Cir. 2011).  Here, the ALJ considered Plaintiff's mental impairment in assessing RFC by explicitly noting that his RFC assessment reflects the degrees of limitation he found in the paragraph B analysis.  Tr. 30.  Thus, even assuming the ALJ erred by concluding that Plaintiff's mental impairment was not

severe, that error was harmless because the ALJ considered all of Plaintiff's impairments, including those he deemed non-severe, when determining Plaintiff's RFC. Tr. 23-36; *Burgin,* 420 F. App'x at 902; *Jamison*, 814 F.2d at 588.

Plaintiff also refers to his GAF scores as evidence supporting the severity of his mental impairment. Doc. 15 at 14. In contrast, the Commissioner correctly argues that GAF scores are no longer endorsed for use in disability programs by the Commissioner and have no "direct correlation to the severity requirements of the mental disorders listings." *Lacina,* 606 F. App'x at 527; Doc. 16 at 13. Instead, Plaintiff must show the effect of his mental impairment on his ability to work. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). As a result, the ALJ not giving any weight to Plaintiff's GAF scores in his decision is at most a harmless error. *See id.; Lacina,* 606 F. App'x at 527. Based on the findings above, the Court finds that the ALJ properly assessed the relevant medical evidence and evaluated the severity of Plaintiff's mental impairment. Tr. 23-31.

### c. *Whether substantial evidence supports the ALJ's finding that Plaintiff could perform his past relevant work*

The ALJ found at step four that through the date last insured, Plaintiff could perform his past relevant work as a car salesman. Tr. 36. The ALJ concluded that his past relevant work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* Plaintiff first argues that the ALJ erred in finding that he could perform his past relevant work because the ALJ did not consult a vocational expert ("VE"). Doc. 15 at 15-16. The Commissioner responds that the

ALJ was not required to consult a VE, and the ALJ's reliance on the Dictionary of Occupational Titles ("DOT") was sufficient.   Doc. 16 at 15-16.

An ALJ is not required to consult a VE in determining whether a claimant can perform his past relevant work.   *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); *Schnoor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) ("[B]ecause the ALJ concluded that she is capable of performing her past relevant work, testimony from a vocational expert was not necessary."); *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) ("Generally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work."). As noted, based on the DOT, the ALJ found that Plaintiff could perform his past relevant work as a car salesman as actually performed and as generally performed in the national economy.   Tr. 36.   The ALJ's failure to consult a VE was not error because the ALJ was not required to do so.   *See Lucas*, 918 F.2d at 1573 n.2; *Schnoor*, 816 F.2d at 582; *Hernandez*, 433 F. App'x at 823.

Plaintiff further asserts that although the ALJ found that Plaintiff was limited in reaching overhead, he did not address this limitation in making his finding at step four.   Doc. 15 at 16.   Contrary to Plaintiff's argument, the ALJ found that Plaintiff "can frequently reach in all directions, including overhead," and did not conclude that he was limited in reaching overhead.   Tr. 30, 35-36.   Furthermore, as the Commissioner accurately argues, Plaintiff indicated that his past work as a car salesman did not involve reaching overhead.   Doc. 16 at 16; Tr. 256-60.   Although Plaintiff bears the burden of showing that he cannot return to his past relevant work,

he did not demonstrate that his past relevant work required him to reach overhead. *Barnes*, 932 F.2d at 1359; *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas*, 918 F.2d at 1571).

Plaintiff further claims that the ALJ erred in not considering the impairment caused by his sleep apnea. Doc. 15 at 16. Plaintiff argues that his sleep apnea affects his ability to operate motor vehicles and heavy equipment. *Id.* Indeed, Joseph C. Daley III, M.D., M.Sc., who treated Plaintiff for excessive daytime somnolence and loud and disruptive snoring, opined on December 27, 2005 that Plaintiff has obstructive sleep apnea syndrome, moderate to severe. Tr. 375. Dr. Daley further noted that Plaintiff was "admonished of the hazards of excess daytime somnolence, including while operating motor vehicles and heavy equipment." *Id.*

Plaintiff's argument does not recognize, however, that the ALJ considered Plaintiff's sleep apnea, but found that Plaintiff's sleep apnea was controlled when he used a continuous positive airway pressure ("CPAP")[14] machine. Tr. 23. The ALJ accurately noted that on June 1, 2010, Plaintiff underwent a sleep study. Tr. 23, 527-28. Following the study, on June 7, 2010, Howard Eisenberg, M.D., F.C.C.P., who examined the results of Plaintiff's sleep study, diagnosed Plaintiff with obstructive sleep apnea, severe with good responses in the lab to CPAP. Tr. 23, 526. The ALJ also discussed that on July 15, 2010, although Plaintiff indicated during his medical appointment that he used a CPAP machine for his sleep apnea, he did not

---

[14] The ALJ explained in his decision that a CPAP machine is a mode of respiratory ventilation used to treat sleep apnea. Tr. 23 n.4.

complain at all about his sleep apnea. Tr. 1054. Furthermore, the ALJ accurately described that Stanley Rabinowitz, M.D., who evaluated Plaintiff at the referral of the Office of Disability Determination, noted that Plaintiff has a history of sleep apnea, which was controlled on CPAP therapy. Tr. 23, 498. As noted, although it is Plaintiff's burden to show that he could not return to his past relevant work, he does not present sufficient evidence to rebut the ALJ's finding. Doc. 15 at 16. *See Barnes*, 932 F.2d at 1359; *Battle*, 243 F. App'x at 522 (citing *Lucas*, 918 F.2d at 1571). Thus, the Court finds that the ALJ properly considered the relevant evidence and concluded that Plaintiff could return to his past relevant work.

### d. Whether the ALJ had a bias that affected his decision

Plaintiff argues that ALJ Butler's decision was compromised by his bias against Plaintiff. Doc. 15 at 17-23. He refers to other opinions and orders, which directed cases to be remanded to a different ALJ to avoid the appearance or risk of actual bias or prejudgment. *Id.* at 17-18. Furthermore, Plaintiff asserts that ALJ Butler has an ongoing lawsuit against the Social Security Administration and is in a personal dispute with Plaintiff's counsel. *Id.* at 18-22. The Commissioner responds that Plaintiff does not show the ALJ's actual bias against him here. Doc. 16 at 16-18.

The Social Security Act requires that a claimant's hearing is both full and fair. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). The ALJ plays a "crucial role in the disability review process" and has a duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to

each claim." *Id.* at 1401. Accordingly, the ALJ must "not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." *Id.* at 1400 (quoting 20 C.F.R. § 404.040).

A court begins with the presumption that an ALJ is unbiased, which "can be rebutted by a showing of conflict of interest or some other *specific reason for disqualification.*" *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982) (emphasis added); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 875 (11th Cir. 2011) (affirming determination of no bias in part because claimant failed to establish specific instances of bias in her case). Generalized assumptions of possible conflict or interest are insufficient. *Schweiker*, 456 U.S. at 196.

Based on its review of the parties' arguments and the record, the Court finds that the ALJ's possible conflicts or interest involving the ALJ's pending litigation or Plaintiff's counsel did not influence his decision in this case. *See* 20 C.F.R. §§ 404.940, 416.1440. As noted, the Court already has found that the ALJ applied the proper legal standards, and his decision is supported by substantial evidence. Other than generally referring to the ALJ's personal conflicts, Plaintiff does not make a specific showing that they resulted in actual bias against him here or tainted the decision before the Court. Doc. 15 at 17-23. *See Schweiker*, 456 U.S. at 196.

In addition, Plaintiff cites other cases in which the Court reversed the Commissioner's decisions and directed the Commissioner to consider assigning the cases on remand to a different ALJ other than ALJ Butler. Doc. 15 at 17 (citing *King v. Comm'r of Soc. Sec.*, No. 2:14-cv-341-FtM-CM, 2015 WL 5234318, at *9 (M.D. Fla.

Sept. 8, 2015); *Ward v. Comm'r of Soc. Sec.*, No. 2:14-cv-419-FtM-CM, 2015 WL 5736177, at *7 (M.D. Fla. Sept. 29, 2015)). Plaintiff asserts that in other instances, the Court ordered re-hearing before a new ALJ instead of ALJ Butler in order to avoid any appearance or risk of actual bias or prejudgment. Doc. 15 at 18 (citing *McEnteer v. Comm'r of Soc. Sec.*, No. 2:15-cv-288-FtM-CM (M.D. Fla. Dec. 14, 2015);[15] *Hill v. Comm'r of Soc. Sec.*, No. 2:14-cv-708-FtM-CM, 2016 WL 1253579, at *10 (M.D. Fla. Mar. 31, 2016); *McCann v. Comm'r of Soc. Sec.*, No. 2:14-cv-265-FtM-CM, 2016 WL 1253576, at *11 (M.D. Fla. Mar. 31, 2016); *Segui v. Comm'r of Soc. Sec.*, No. 2:15-cv-399-FtM-CM, 2016 WL 5443673 (M.D. Fla. Sept. 29, 2016)).

Plaintiff does not discuss, however, that in *King*, *Ward*, *Hill*, *McCann*, and *Segui*, the Court reversed ALJ Butler's decisions because substantial evidence did not support his decisions, not because of his actual bias against the plaintiffs. *King*, 2015 WL 5234318, at *9; *Ward*, 2015 WL 5736177, at *7; *Hill*, 2016 WL 1253579, at *10; *McCann*, 2016 WL 1253576, at *11; *Segui*, 2016 WL 5443673, at *8. Only after finding remand appropriate on other grounds, the Court ordered re-hearing before a different ALJ on remand to avoid any appearance or risk of actual bias or prejudgment. *Hill*, 2016 WL 1253579, at *10; *McCann*, 2016 WL 1253576, at *11; *Segui*, 2016 WL 5443673, at *8. The Court also found in *King* and *Ward* that the plaintiffs had not "shown that ALJ Butler's lawsuit, filed after his opinion[s] in [these

---

[15] In *McEnteer*, the Commissioner filed a motion to remand this case to the Commissioner, which the Court granted (Doc. 21). No. 2:15-cv-288-FtM-CM (M.D. Fla. Dec. 14, 2015).

cases were] issued and which does not involve [the plaintiffs' cases,] resulted in actual bias." *King*, 2015 WL 5234318, at *9; *Ward*, 2015 WL 5736177, at *7.

Here, unlike the decisions cited by Plaintiff, he has not shown that ALJ Butler's decision warrants remand. Doc. 15. Nor does Plaintiff show that ALJ Butler's ongoing lawsuit and personal dispute with Plaintiff's counsel resulted in actual bias. *Id.* at 17-23.

## V.     Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 28th day of August, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record